**UNITED STATES of America, Plaintiff,**

**v.**

**637.84 ACRES OF LAND, MORE OR LESS, SITUATE IN OREGON COUNTY, STATE OF MISSOURI; and Daniel J. Staack, et al., Defendants.**

**No. 78–3297–CV–S–1.**

United States District Court, W. D. Missouri, S. D.

Oct. 21, 1981.

---

Robert G. Ulrich, U. S. Atty., Linda L. Parker, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

George M. Bock, Slagle & Bernard, Kansas City, Mo., and Charles E. Eklund, Querry, Harrow, Gulanick & Kennedy, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, Senior District Judge.

This case pends on the Court's Order to Show Cause, issued April 21, 1981, as to why title and possession should not be confirmed in plaintiff in accordance with the Judgment Upon Declaration of Taking and Order for Possession attached thereto.

Defendants Daniel J. Staack and Dorothy A. Staack raise two legal objections in response to the Court's Order to Show Cause, both of which should more properly have been raised in an Answer to the Complaint in Condemnation. Defendants did not file any Answer to the Complaint. While this might be a sufficient ground to dispose of defendants' objections outright, we will respond to each of the objections in turn. We conclude that Judgment must be entered upon the aforementioned Declaration of Taking and Order for Possession.

The basis of defendants' objections is that the Complaint and Declaration of Taking seek and declare title, possession and control beyond that authorized by the Wild and Scenic Rivers Act (16 U.S.C. §§ 1271–1287) in that the following restrictions are imposed on the "scenic easement estate": [1]

(A) A prohibition against subdivision or disposal of [the subject] land in units of less than 250 acres;

---

1. See Schedule C of plaintiff's complaint. In addition to the "scenic easement parcel," the complaint also seeks condemnation of a fee interest in a separate parcel of land. The latter parcel is not the subject of any dispute between the parties.

(B) The imposition of a requirement upon the landowner to maintain a bridge within the scenic easement parcel "in a safe, but basically unaltered, condition."

## I.

■ Regarding (A) above, defendants contend that in acquiring a "scenic easement," the government is limited to "the right to control the use of land" and lacks the power to impose "restrictions on the alienability of land or restrictions on disposal of land." Section 1277 of Title 16, U.S.C., provides as follows:

(a) The Secretary of the Interior and the Secretary of Agriculture are each authorized to acquire *land and interests in land* within the authorized boundaries of any component of the National Wild and Scenic Rivers System designated in Section 1274 of this Title, or hereinafter designated for an inclusion in the system by an Act of Congress, which is administered by him . . . . " (emphasis added)

(b) If 50 per centum or more of the entire acreage within a federally administered wild, scenic or recreational river area is owned by the United States, by the State or States within which it lies, or by political subdivisions of those States, neither Secretary shall acquire fee title to any lands by condemnation under authority of this chapter. *Nothing contained in this section, however, shall preclude the use of condemnation when necessary to clear title or to acquire scenic easements or such other easements as are reasonably* necessary to give the public access to the river and to permit its members to traverse the length of the area or of selected segments thereof. (emphasis added)

Section 1286(c) defines "scenic easement" as follows:

"Scenic easement" means *the right to control the use of land* . . . for the purpose of protecting the natural qualities of a designated wild, scenic or recreational river area . . . . (emphasis added)

The question presented is whether a restriction on the subdivision of property in parcels of less than 250 acres is a "control [of] the use of land" within § 1286(c).[2] We hold that it is.[3]

We construe the definition of "scenic easement" in light of the intended purpose of the Wild and Scenic Rivers Act, to restore and preserve the natural state of the rivers designated thereunder. *See United States v. Adams,* Civil No. 77–3538–CV–S–1, unpublished opinion filed March 6, 1981 in the United States District Court for the Western District of Missouri.

"Control [of] the use of land" must be interpreted to include a restriction on the subdivision of a large parcel of land into many smaller parcels. Only such an interpretation of "control of use" is consistent with the broad authority given the Secretary in § 1277(a), to condemn "lands or interests in land" in furtherance of the Act.[4]

Defendants allege the "practical consequences" of the restriction sought to be

---

2. Counsel have not cited the Court to any cases dealing with this question, nor has the Court discovered any itself in pursuing the matter. The question is one of first impression.

3. In reaching this question, we are fully cognizant of the limited scope of judicial review of administrative decisions under the Act. *Compare, e. g., Berman v. Parker,* 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954). Nevertheless, we conclude that the narrow question of whether or not a particular taking is authorized by the terms of the statute itself and therefore within the agency's power, is reviewable by the courts. Especially must this be so where the Act itself specifically enumerates express limitations on the power of the agency to condemn

property. *See, e. g.,* 16 U.S.C. § 1277(a) and (b).

4. We need not and do not reach the question of the propriety of an absolute restriction on the sale of an entire parcel of land. We decide only that a restriction on subdivision of a large parcel of land into many smaller ones is within the power of the Secretary to "control the use of land." Also, we need not decide whether an absolute restriction would be within the Secretary's power to acquire "interests in land." We conclude that any possible incongruence of the term "scenic easement," as defined in § 1286, and "interests in land" in § 1277(a), is not presented in this case.

imposed in (A) above, and characterize the question as:

> in what manner the restriction on disposal serves the congressional purpose or the statutory goal of control of the use of land within the boundary of the project. [Defendants "Suggestions," p. 3]

We think *Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1926), precludes inquiry as to whether the decision of the Secretary was necessary to effectuate the public purpose of the Act. Such a decision would require a practical judgment and expertise that courts do not possess. We note in passing, however, that one may readily conclude that restrictions on subdivision or disposal of small parcels of subject property, not uncommonly imposed in condemnation proceedings under the Act, may further the public policy of § 1271, that "selected Rivers of the Nation . . . and their immediate environments shall be protected for the benefit and enjoyment of present and future generations." Schedule C, appended to plaintiff's complaint, states the purpose of the restriction, "to prevent any developments or changes that will tend to detract from the natural qualities of [the subject] area . . . ." Subdivision of a large parcel into many smaller ones may tend to degrade the quality and value of the land.

## II.

Regarding (B) above, defendants contend:

> Nor is there any provision of the statute which would even remotely permit the plaintiff, by the imposition of a scenic easement, to impose upon the landowner an affirmative duty to maintain a bridge "in a safe, but basically unaltered, condition."

We cannot accept this characterization of the Complaint in Condemnation, nor can we abide by its conclusion. Section 3(c) of the Restriction On Land Use By The Servient Landowner, appended as Schedule C to the Complaint in Condemnation, reads as follows:

> 3. Authorized additional and/or replacement buildings, structures, utility

poles and fences shall, at a minimum, be *subject* to the following requirements:

> \*  \*  \*  \*  \*  \*

> c. The bridge which crosses the Eleven Point River . . . shall be maintained by the grantor, his heirs or assigns, in a safe, but basically unaltered, condition. Maintenance and/or reconstruction shall not, without the prior written approval of the Secretary's representative, result in the creation of a bridge which in the opinion of the Secretary's representative differs significantly in capacity or appearance from the bridge existing on the date of the filing of this Declaration of Taking. (emphasis added)

We think the sense of subsection (c), taken together with the introductory sentence of section 3, is that any repairs, additions to or replacements of the bridge shall not essentially alter the condition in which it was found at the time of the Declaration of Taking, and that it does not purport to impose an affirmative duty to make repairs.

In the Stipulation As To Prior Uses, filed with the Court on August 17, 1981, the parties specified in paragraph 4 "the use of an existing wooden plank bridge crossing the Eleven Point River;" and later in that same paragraph "the use of all dwellings, facilities and improvements located on the described tract in connection with [the foregoing and after-mentioned] operations." And in paragraph 14(m) of the stipulation the wooden plank bridge is listed as one of the "existing improvements within the scenic tract."

Section 1286 of Title 16, U.S.C., which defines "scenic easements," provides:

> [S]uch control shall not affect, without the owner's consent, any regular use exercised prior to the acquisition of the easement.

Obviously, allowing the bridge to fall into disrepair is not a "regular use" protected by the section. It is hard to understand how the defendants argue at one and the same time that their "regular use" of the bridge should be protected and that to preserve

that use, there is no obligation to keep the bridge in repair. If the defendants allow the bridge to fall into disrepair, they may thus abandon their right of "regular use." And if repairs, additions, or replacements of the bridge are made pursuant to the easement of regular use retained in defendants, they shall not alter the basic structure or design of the bridge. That is what is contemplated by the Complaint in Condemnation, and nothing more.

For the reasons stated, it is

ORDERED that the Clerk shall enter the Judgment Upon Declaration of Taking And Order for Possession.